GILL SPERLEIN (172887)
THE LAW FIRM OF GILL SPERLEIN
584 Castro Street, Suite 849
San Francisco, California 94114
Telephone: (415) 378-2625
Facsimile: (415) 252-7747
legal@titanmedia.com

Attorney for Plaintiff
IO GROUP, INC.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IO GROUP, INC. d/b/a TITAN MEDIA, a California corporation,<br><br>    Plaintiff,<br><br>            vs.<br><br>MARK LAPERNA, an individual; and DOES 1-44, individuals,<br><br>    Defendants. | CASE NO.<br><br>**DECLARATION OF KEITH WEBB IN SUPPORT OF PLAINTIFF IO GROUP, INC.'S NOTICE MISCELLANEOUS ADMINISTRATIVE REQUEST FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26 CONFERENCE** |

I, KEITH WEBB, declare:

    1.    I am vice president of Plaintiff Io Group, Inc. and have been for the last eight (8) years.

    2.    In my role as vice president of Io Group, I am in charge of Io Group's Internet operations and am generally informed as to the operation of Internet based websites. In my experience Internet access providers maintain subscriber activity logs indicating which of its subscribers were assigned an ip address at any give date and time, but only maintain subscriber activity logs for a short period of time before destroying the information contained in the logs.

3. I observed and documented infringement of Io Group works on ning.com as described in the Complaint.

4. I am aware of no reliable means for identifying the DOE defendants in this matter other than obtaining subscriber information for ip addresses associated with the infringing activity from Internet access providers.

5. I also am in charge of Io Group's anti piracy department and I am familiar with many aspects of on-line piracy.

6. The infringement at issue in the matter is an example of the latest scheme infringers have developed for distributing infringing works via the Internet. The infringing activity revolves around a series of Internet-based social networks developed on the Ning.com platform.

7. Ning.com is a commercial enterprise that provides free hosting and other support for individuals who wish to create and operate Internet-based social networks. Under this arrangement, the domain name of the social network site consists of Ning's base domain and a subdomain determined by the individual operating the social network. Thus, the names of the piracy networks created and operated by Defendant LaPerna and Doe Defendants 1 through 7 in this matter (bigdickclub.ning.com, americangay.ning.com, erogenouszone.ning.com, fotofylesfotos.ning.com, gaymaleduojoshare.ning.com, jimiphilsnetwork.ning.com, mp2guys and pornoshare.ning.com) consist of Ning's base domain name (ning.com) and the Defendants' network name.

8. The creators of social networks create them around any number of themes, issues or discussions. In this matter, LaPerna and Defendants 1-7 who also created social networks on the Ning.com platform, created the networks specifically as locations to trade sexually explicit audiovisual files without regard to copyright.

9. It is often difficult to identify individuals operating on the Internet because they frequently provide bogus information when registering to participate on a particular social network. This is particularly true when the individual is accessing the site in order to engage in illegal activity such as copyright infringement. On the other hand, when an Internet user subscribes with an Internet service/access provider in order to obtain Internet access, the user by necessity *does* provide accurate information so that the provider can connect service and collect payment.

10. When an Internet service/access provider supplies a connection to the Internet, the connection is identified by a series of numbers called an Internet protocol ("ip") address. An ip address can be analogized to a telephone number. Just as a telephone company provides a telephone number to its customers, an Internet access provider assigns an ip address to each of its subscribers. Just as caller ID allows someone to identify the telephone number from which a telephone call originates, so can a website determine the ip address and thus the location from which Internet activity is originates.

11. When a user accesses a website such as one of the piracy networks at issue in this matter, the website generally records the ip address being used to access the site and stores that information on the its server logs. In this case, LaPerna and each of the DOES either created and maintained a piracy network or accessed a piracy network in order to display or distribute infringing copies of plaintiff's copyright registered works.

12. Anyone can perform a simple search on public databases to determine which Internet access provider controls a specific ip address. For example, XYZ access provider may control all ip addresses between 12.345.678.001 and 12.345.678.900. If a user engages in

-3-

infringing activity using the ip address 12.345.678.050, then XYZ provides Internet access for that user.

13. Often larger Internet access providers that control blocks of ip addresses assign smaller blocks of ip addresses to smaller (downstream) access providers, who in turn assign the ip addresses to individual subscribers. In such cases, the large access providers cannot identify the individual subscribers, they can only identify the downstream provider and that provider can identify the individual account holder.

14. Keith Webb is a pseudonym which I use for business purposes in place of my true legal name.

Pursuant to the laws of the United States, I declare under penalty of perjury the foregoing is true and correct.

Dated:

                              KEITH WEBB
                              Vice-President, Io Group, Inc.